**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| IN RE: JOHNSON & JOHNSON | : | MDL No. 2738 |
| TALCUM POWDER PRODUCTS | : | |
| MARKETING, SALES PRACTICES | : | Civil Action No.:16-7891(FLW) |
| AND PRODUCTS LITIGATION | : | |
| | : | **OPINION** |
| | : | |
| This document relates to: | : | |
| | : | |
| Bridget McBride, Plaintiff, | : | |
| vs. | : | |
| Johnson & Johnson, *et al.*, | : | |
| Defendants. | : | |

_____:

**<u>WOLFSON, United States District Judge:</u>**

This matter, which is one of the transferred cases in the Johnson & Johnson

Talcum Powder Products multidistrict litigation ("MDL"), comes before the Court on a

motion to remand brought pursuant to 28 U.S.C. § 1447 and 28 U.S.C. § 1332 filed by

Plaintiff Bridget McBride ("Plaintiff").  Plaintiff, a Louisiana citizen, contends that

removal to federal court was improper due to a lack of diversity because the Louisiana

Defendants, Schwegmann Westside Expressway, Inc. individually and as a successor in

interest to Schwegmann Bros., Inc. ("Schwegmann"), and K&B Louisiana Corporation

(d/b/a Rite Aid Corporation) individually and as a successor in interest to Katz &

Besthoff, Inc. ("K&B"), were properly joined in the original state court action, previously

filed in the Civil District Court for the Parish of Orleans in Louisiana.  Defendants

Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively, "J&J") argue

that Schwegmann and K&B were fraudulently joined in this case to defeat diversity

jurisdiction. For the following reasons, Plaintiff's motion to remand is **GRANTED**, and the case is remanded to Civil District Court for the Parish of Orleans in Louisiana.

## PROCEDURAL BACKGROUND[1]

On September 19, 2016, Plaintiff filed this action sounding in negligence and strict products liability in Civil District Court for the Parish of Orleans, State of Louisiana, against J&J, Schwegmann, K&B, and Imerys Talc America, Inc., f/k/a Luzenac America, Inc. ("Imerys") (collectively, "Defendants"), claiming that she developed ovarian cancer due to regular perineal application of talcum powder. For purposes of determining diversity, J&J are citizens of New Jersey, Imerys is a citizen of Delaware and California, and K&B and Schwegmann are citizens of Louisiana. Plaintiff is a citizen of Louisiana.

On October 11, 2016, J&J and Imerys filed a Notice of Removal, pursuant to 28 U.S.C. § 1446, to remove the matter to the U.S. District Court for the Eastern District of Louisiana. In so doing, J&J and Imerys asserted that Schwegmann and K&B were fraudulently joined to defeat diversity jurisdiction because liability could not be imposed on either Schwegmann or K&B. After removal, on October 26, 2016, the Multi-District Litigation Panel transferred this matter to this Court, and on December 16, 2016, Plaintiff moved to remand before this Court.

## FACTUAL BACKGROUND[2]

On or about April 16, 2001, Plaintiff was diagnosed with ovarian cancer. Compl. ¶ 3. Plaintiff alleges that her cancer resulted from regular perineal application, during the

---

[1] The Court limits its discussion to the facts relevant to Plaintiff's instant motion to remand.

[2] The following facts are taken from the Complaint, except where noted.

time period of 1979 to 2016, of talcum powder contained in Johnson & Johnson Baby Powder and Shower to Shower (collectively, the "J&J talcum products"). Compl. ¶¶ 3, 5.

According to Plaintiff, the J&J talcum products are "unreasonably dangerous and defective." Compl. ¶ 3. Moreover, Plaintiff alleges that during all pertinent times, a feasible alternative to the J&J talcum products, i.e., cornstarch, existed. Compl. ¶ 13. Cornstarch, Plaintiff alleges, is nearly as effective and has no known health effects. Compl. ¶ 13.

Plaintiff alleges that each Defendant, including K&B and Schwegmann, played some role in mining, producing, processing, designing, manufacturing, testing, evaluating, marketing, packaging, furnishing, storing, handling, transporting, installing, supplying, delivering, distributing, purchasing, promoting, or selling the J&J talcum products. Compl. ¶¶ 6–7. In her complaint, Plaintiff references more than 10 studies, which, according to Plaintiff, show an association between talc, the main substance in the J&J talcum products, and ovarian cancer. Compl. ¶¶ 12, 19–29. In this regard, Plaintiff alleges that each Defendant, including K&B and Schwegmann, "had a duty to know and warn about the hazards associated with the use of the [J&J talcum products]." Compl. ¶ 29. Plaintiff further alleges that each Defendant failed to inform consumers, including Plaintiff, of the "known catastrophic health hazard associated with the use of [the J&J talcum products]." Compl. ¶ 30. According to Plaintiff, each Defendant allegedly "procured and disseminated false, misleading, and biased information regarding [the J&J talcum products]," Compl. ¶ 31, and "[e]ach of the Defendants [allegedly] knew or should have known through industry and medical studies, the existence of which were unknown to [Plaintiff], of the health hazards inherent in [the J&J talcum products] they

were selling and/or using." Compl. ¶ 33. Therefore, Plaintiff alleges that "Defendants ignored or actively concealed such information, or condoned such concealment, in order to sell [the J&J talcum products] and to avoid litigation . . ." Compl. ¶ 33.

Based on these factual allegations, Plaintiff alleges, "[a]s a direct and proximate result of Defendants' . . . conduct, [Plaintiff] was injured and suffered damages." Compl. ¶ 32. Thus, as a result of each Defendant's role with respect to the J&J talcum products, Plaintiff alleges the Defendants are jointly and severally liable for mental, emotional, financial, and physical damages. Compl. ¶ 62.

Of note, Plaintiff's Complaint makes several allegations that generally apply to each defendant. Most of these allegations do not specify whether they are related to J&J, Imerys, K&B, or Schwegmann. However, specific to Schwegmann[3] and K&B,[4] Plaintiff alleges that she purchased talcum products from Schwegmann and K&B. Compl. ¶42. After purchasing those products from, Plaintiff alleges that she used and perineally applied the J&J talcum products. Compl. ¶ 42. Because of Schwegmann's and K&B's

---

[3]     According to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Remand, Schwegmann is the lessor of real property to the Schwegmann Giant Super Markets chain of grocery stores. Decl. of Shaun B. Rafferty in Supp. of Def.'s Memorandum in Opposition to Pl.'s Mot. to Remand, at ¶ 4. Schwegmann's attorney, Shaun B. Rafferty, declares that Schwegmann did not operate the Schwegmann Giant Super Market store to which space was leased, nor did it sell *any* products to consumers. *See* Decl. of Shaun B. Rafferty in Supp. of Def.'s Memorandum in Opposition to Pl.'s Mot. to Remand, at ¶ 7. Furthermore, Schwegmann had no role or influence in manufacturing or repackaging the J&J talcum products. Decl. of Shaun B. Rafferty in Supp. of Def.'s Memorandum in Opposition to Pl.'s Mot. to Remand, at ¶ 9. Plaintiff does not dispute any of the declarations with regard to Schwegmann.

Because Plaintiff failed to name Schwegmann Giant Super Markets individually or its successor in interest in her Complaint, the Court must confine its discussion in this Opinion to the claims made in Plaintiff's Complaint, and therefore, the Court's discussion herein only relates to Schwegmann, the lessor of real property.

[4]     K&B is a retailer of several consumer products, including the J&J talcum products.

"size, volume of business and merchandising practices," as they relate to the talcum products, Plaintiff alleges that these two defendants can also be held strictly liable and negligent for failing to warn consumers of the health hazards associated with the talcum products. Compl. ¶ 48.

Count One of the Complaint alleges strict liability and negligence as to all of the Defendants. Relevant to this motion, Count One sets out, in part, that Schwegmann and/or K&B represented themselves as manufacturers of the J&J talcum products or were professional vendors of the J&J talcum products.[5] Compl. ¶ 36. Count Two of the Complaint, in part, reiterates that Schwegmann and K&B are liable to Plaintiff as professional vendors of the J&J talcum products.[6] Compl. ¶ 48.

Outside of the allegations in the Complaint, in her motion to remand, Plaintiff clarifies that K&B "repackaged and/or rebranded [the J&J talcum products], and sold them as [its] own." Pl.'s Mot. to Remand, at 9. Additionally, Plaintiff argues in her motion to remand that K&B "was an actual manufacturer of its own talcum powder product." Pl.'s Mot. to Remand, at 7. According to Plaintiff's motion to remand, "[f]rom approximately 1915 up until . . . 1997, [K&B] was one of the largest distributors of a variety of talcum powder products throughout the State of Louisiana, including talcum powder products which were branded and manufactured by [K&B] itself." Pl.'s Mot. to Remand, at 7–8. Plaintiff further alleges in her motion, that if discovery were to

---

[5] Although its not specifically pled, it appears that plaintiff is asserting a products liability claim under the Louisiana Products Liability Act and a common law claim under a professional vendor theory of liability. Indeed, the parties have so argued in their motion papers.

[6] Counts Three and Four are limited to J&J and Imerys; thus, they will not be discussed herein.

commence, "Plaintiff anticipates testimony which will reveal that she purchased [the J&J talcum products], as well as other brands of talcum powder products, potentially including those manufactured and sold by Louisiana Defendant, K&B." Pl.'s Mot. to Remand, at 8.

Plaintiff now moves to remand the instant matter to Civil District Court for the Parish of Orleans, State of Louisiana, on the basis that Schwegmann and K&B are citizens of Louisiana and were properly joined in this matter; thus, Plaintiff argues this case lacks complete diversity. J&J opposes the motion asserting that neither K&B nor Schwegmann has any reasonable possibility of being held liable for Plaintiff's injuries, and were therefore, fraudulently joined in this action to defeat diversity jurisdiction.

## DISCUSSION

Pursuant to 28 U.S.C. § 1407, this civil action was transferred to this Court as part of the Johnson & Johnson Talcum Powder Products multidistrict litigation ("MDL"). "The legislative history of § 1407 . . . demonstrates that Congress intended transferee courts to have broad pretrial authority." *In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000). "Under the Federal rules the transferee district court [has] authority to render summary judgment, to control and limit pretrial proceedings, and to impose sanctions for failure to make discovery or comply with pretrial orders." *Id.* (citation omitted). Accordingly, as a preliminary matter, to the extent that the parties rely on Fifth Circuit law in the context of remand, this Court notes that such law does not govern the instant motion. Specifically, "[a]s an MDL court sitting within the Third Circuit, [this District Court] must apply [this] Court of Appeals' fraudulent joinder standard." *In re Diet Drugs (Phentrmine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. CIV.A. 03-

20128, 2003 WL 21973329, at *2 (E.D. Pa. June 12, 2003) (citing *In re Korean Airlines Disaster,* 829 F.2d 1171, 1174 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989)); *In re Ikon Office Solutions, Inc. Secs. Litig.,* 86 F. Supp. 2d 481, 484 (E.D. Pa. 2000)); *see also In Re Plavix Prod. Liab. & Mktg. Litig.*, No. 3:13-CV-03610-FLW, 2014 WL 4954654, at *6–*8 (D.N.J. Oct. 1, 2014) (applying the Third Circuit's fraudulent joinder standard to a matter that was initially filed in California state court and subsequently removed to the U.S. District Court for the Northern District of California, where it was transferred to the District of New Jersey as part of an MDL).

## STANDARD OF REVIEW

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court." The defendant seeking to remove the matter bears the burden of showing that (1) federal subject matter jurisdiction exists, (2) removal was timely filed, and (3) removal was proper. 28 U.S.C. §§ 1441, 1446, 1447; *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991). After a case has been removed, the district court, however, may nonetheless remand it to state court if the removal was procedurally defective or subject matter jurisdiction is lacking. 28 U.S.C. § 1447(c).

In cases where subject matter is based on diversity jurisdiction, *see* 28 U.S.C. § 1332, each party must be of diverse citizenship from each other and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a); *Grand Union Superm. of the Virgin Isl., Inc., v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003). Additionally, Section 1441(b)(2) imposes an added condition on removal known as the

"forum defendant rule," which provides that an "action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." "Therefore, the forum defendant rule prohibits removal based on diversity where a defendant is a citizen of the forum state—the state in which the plaintiff originally filed the case."[7] *In Re Plavix Prod. Liab. & Mktg. Litig.*, 2014 WL 4954654, at *3 (citing *Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 90 n.3 (3d Cir. 1999)).

## FRAUDULENT JOINDER

An exception to the requirement that removal be based solely on complete diversity is the doctrine of fraudulent joinder. *In re Briscoe*, 448 F.3d 201, 215–16 (3d Cir. 2006). Where multiple defendants are named, but one or more are not of diverse citizenship from the plaintiff, "the diverse defendant[s] may still remove the action if [they] can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." *Id.* at 216. To make this showing, "the removing party carries a heavy burden of persuasion," *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (citations omitted); *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), because "removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Batoff*, 977 F.2d at 851 (quoting *Steel Valley Author. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987), *cert. dismissed*, 484 U.S. 1021 (1988) (internal citation omitted)).

---

[7]     The Court notes that Plaintiff's argument that the forum defendant rule is applicable here to bar removal is misplaced, because Defendants removed based on fraudulent joinder, which seeks to disregard the citizenship of the Louisiana based defendants.

The Third Circuit has instructed "that joinder is fraudulent 'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" *Boyer,* 913 F.2d at 111 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) (describing a claim as not colorable if it is "wholly insubstantial and frivolous"). Accordingly, a court's determination of fraudulent joinder does not focus on whether plaintiff's claims are "plausible" under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) or Rule 12(b)(6), rather it focuses on whether they are more than "frivolous." *In re Briscoe*, 448 F.3d at 218; *Batoff*, 977 F.2d at 852. To be clear, and importantly, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *In re Briscoe*, 448 F.3d at 218 (quoting *Batoff*, 977 F.2d at 852).

Once the district court determines that the nondiverse defendant was fraudulently joined, the court can "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *In re Briscoe*, 448 F.3d at 16 (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). However, should the district court determine that a colorable ground exists to support a claim against the nondiverse defendant, then subject-matter jurisdiction is lacking over the removed action and the joinder was not fraudulent. 28 U.S.C. § 1447(c); *In re Briscoe*, 448 F.3d at 216. Of course, if subject-matter jurisdiction is lacking, the district court must remand to state court. *Id.*

Indeed, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Boyer*, 913 F.2d at 111 (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir. 1983)). In so doing, the court must "assume[ ] as true all factual allegations of the complaint," *Batoff*, 977 F.2d at 852 (citation omitted), "resolve all contested issues of substantive fact in favor of the plaintiff[,] and . . . resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Boyer*, 913 F.2d at 111 (citation omitted).

Applying these standards, the district court must make a two-part inquiry. First, the court must determine whether the complaint sufficiently alleges the nondiverse defendants' "identity and conduct to justify consideration of their citizenship." *In re Briscoe*, 448 F.3d at 218 (quoting *Abels*, 770 F.2d at 29). Second, the court must cautiously tread "beyond the face of the complaint for indicia of fraudulent joinder," *Id.* (quoting *Abels*, 770 F.2d at 29), without stepping "from the threshold jurisdictional issue into a decision on the merits." *Id.* at 219 (quoting *Boyer*, 913 F.2d at 112 (citation omitted).

As part of the fraudulent joinder assessment, "'the district court must focus on the plaintiff's complaint at the time the petition for removal was filed.'" *Hogan v. Raymond Corp.*, 536 F. App'x 207, 211 (3d Cir. 2013) (quoting *In re Briscoe*, 448 F.3d at 217 (quoting *Batoff*, 977 F.2d at 851)); *see also Abels*, 770 F.2d at 29 (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 540 (1939)); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 & n.16 (5th Cir. 1995) (explaining the rationale for this requirement).

However, information outside of the complaint may be considered for jurisdictional purposes when it *clarifies* an allegation included in the complaint:

> [Although [the defendant] is correct that a plaintiff may not defeat removal by subsequently *changing* his [complaint], because post-removal events cannot deprive a court of jurisdiction once it has attached, *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938),] in this case the affidavits clarify a petition that previously left the jurisdictional question ambiguous. Under those circumstances, the court is still examining the jurisdictional facts *as of the time* the case is removed, but the court is considering information submitted after removal.

*Cavallini*, 44 F.3d at 265 [8] (emphasis original) (quoting *Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia (ANPAC) v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993), *cert. denied*, 510 U.S. 1041 (1994), *abrogated on other grounds by Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998), *rev'd sub nom. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999); *Conk v. Richards & O'Neil, LLP*, 77 F. Supp. 2d 956, 964 (S.D. Ind. 1999) ("saying that the district court must 'focus on the plaintiff's complaint at the time the petition for removal was filed' falls short of prohibiting a plaintiff from elaborating on the claims actually asserted in the complaint"). However, considering post-removal information for clarification purposes "does not [mean] that, after a fraudulent joinder removal, a plaintiff may amend the complaint in order to state a claim against the nondiverse defendant, and thus divest the federal court of jurisdiction." *Id.* (footnote omitted); *accord Griggs v. State Farm v. Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) ("[p]ost-removal filings may not be considered . . . when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court" (citation omitted)).

---

[8]    The Third Circuit has approvingly cited to *Cavallini v. State Farm Mut. Auto Ins. Co.*, for its rationale of focusing on the plaintiff's complaint at the time the petition for removal was filed. *See Hogan*, 536 F. App'x at 211.

To begin, Plaintiff's claims allegedly result from her perineal application of the J&J talcum products from approximately 1979 to 2016, which Plaintiff purchased from K&B. Compl. ¶ 3, 5, 42. Because Plaintiff purchased the J&J talcum products from K&B, the genesis of Plaintiff's complaint is that K&B can be held liable either (1) as having sold her the J&J talcum products while representing itself as a manufacturer of the products or (2) as a professional vendor of the J&J talcum products. Compl. ¶¶ 36, 48. In essence, her first theory, K&B representing itself as a manufacturer of the J&J talcum products, relies on the Louisiana Products Liability Act ("LPLA"). La. Rev. Stat. Ann. § 9:2800.51–60 (1988). [10] In contrast, her second theory, professional vendor liability, relies on Louisiana tort law extant prior to the enactment of the LPLA.

The LPLA became effective on September 1, 1988. *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995); 1988 La. Acts No. 64 (codified at La. Rev. Stat. Ann. §§ 9:2800.51–60). The Supreme Court of Louisiana has stated that the LPLA "alters substantive rights" and "is not retroactive." *Gilboy v. Am. Tobacco Co.*, 582 So. 2d 1263, 1264 (La. 1991). "In the absence of contrary legislative expression, substantive laws apply prospectively only." La. Civ. Code Ann. art. 6. Whereas, "[p]rocedural and interpretative laws apply both prospectively and retroactively, unless

---

[9]     Because the Court finds a colorable ground supporting Plaintiff's claims against K&B, the Court need not visit whether a colorable ground exists against Schwegmann. However, the Court questions whether Schwegmann, the lessor of real property, sold *any* products to consumers; if not, Schwegmann would seemingly not be a proper defendant. In any event, so long as one defendant is not diverse, this Court lacks subject-matter jurisdiction. *See* 28 U.S.C. § 1447(c). Because the Court finds *infra*, that K&B is joined properly, this Opinion will only focus on claims against K&B.

[10]     At the outset, the Court notes that it is undisputed that Louisiana law governs Plaintiff's substantive claims.

there is a legislative expression to the contrary." *Id.* Thus, the LPLA only governs Plaintiff's products liability claims arising after September 1, 1988. *See Gilboy*, 582 So. 2d at 1264. For Plaintiff's causes of action accruing before September 1, 1988, the LPLA does not apply. *See Brown*, 52 F.3d at 527 ("[Plaintiff] could recover under pre-LPLA law if there were evidence that his cause of action accrued before September 1, 1988"); *Hoerner v. ANCO Insulations, Inc.*, 812 So.2d 45, 59 n.1 (La. Ct. App. 2002) (noting when facts occurred prior to the adoption of the LPLA, the "professional vendor" theory can be applicable); *see also Powers v. Beacon CMP Corp.*, No. CV 6:16-0638, 2016 WL 4411363, at *4 (W.D. La. July 1, 2016), *report and recommendation adopted*, No. CV 6:16-638, 2016 WL 4421196 (W.D. La. Aug. 18, 2016), *appeal dismissed sub nom. Kay Powers v. Beacon C.M.P. Co.* (Sept. 19, 2016) (applying pre-LPLA law, the professional vendor theory, to conduct that occurred prior to the enactment of the LPLA). Accordingly, whether the LPLA or Louisiana tort law applies to Plaintiff's causes of action depends on when each cause of action accrued.[11] *Brown*, 52 F.3d at 527 ("[T]he determinative point in time separating prospective from retroactive application of an enactment is the date the cause of action accrues" (citation omitted)). To be sure, "[a]

---

[11]     Given the pleadings and procedural posture, *i.e.*, Plaintiff's motion to remand, this Court will address the arguments before it and leave for the Louisiana state court the issue of whether or how to apply the LPLA to each of Plaintiff's claims. *See In re Briscoe*, 448 F.3d at 218 ("[W]here there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses. Such a determination must be left to the state court." (internal citation omitted)).

       Additionally, the Court also notes that part of the fraudulent joinder inquiry may include consideration of evidence related to a statute of limitations defense to claims against nondiverse defendants. *Id.* at 219–20. However, here, since this defense has not been raised, there is no occasion to visit the issue.

cause of action accrues when a plaintiff may bring a lawsuit."[12]  *Id.*  In this regard, to properly assert a cause of action in Louisiana, a plaintiff must (1) define a wrongful act by the defendant and (2) declare damages resulting from this act.  *See* La. Civ. Code Ann. art. 2315.

In opposing Plaintiff's motion to remand, Defendants argue (1) there is no reasonable possibility that K&B could be held liable as a manufacturer under the LPLA; (2) there is no reasonable possibility that K&B could be held liable as a non-manufacturer seller under Louisiana tort law; and (3) the dearth of allegations connecting Plaintiff's injury to any purported conduct by K&B further demonstrates fraudulent joinder. However, this Court finds Defendants' arguments unavailing.

## A.  Liability as a Manufacturer

### i.  Post-LPLA Liability

Defendants' first argument is that there is no reasonable possibility for K&B to qualify as a manufacturer under the LPLA, because, Defendants argue, K&B did not *manufacture* the J&J talcum products.  Def.'s Mem. in Opp. to Pl.'s Mot. to Remand, at 7–8.  In making this argument, Defendants assert that Plaintiff's "[p]etition is devoid of any factual allegations that K&B [is a] manufacturer[ ] of [the J&J talcum products.]"  *Id.* at 8 (citation omitted).  Specifically, Defendants emphasize that plaintiff has failed to allege that K&B "exercised control over the design, construction, or quality of the talcum

---

[12]     Here, Plaintiff's use of the talcum powder products occurred from approximately 1979-2016.  Because her use began before the LPLA was enacted and continued after the LPLA became law, Plaintiff advances theories of liability under both causes of action. As part of this Court's fraudulent joinder inquiry, there is no need to determine when Plaintiff's causes of action accrued; rather, the Court's analysis focuses on whether Plaintiff's claims are colorable under either theory, as discussed *infra*.  Moreover, as the Court has already noted, there may be issues involving a statute of limitations defense, but, because this defense has not been raised, the Court has no basis to address it.

products." *Id.* at 10 (alterations omitted) (citation omitted). Relying on *Wornner v. Christian Home Health Care, Inc.*, 2014 WL 130331 (E.D. La. Jan 14, 2014), Defendants stress that K&B "had [no] role in manufacturing, testing, or designing" the J&J talcum products. *Id.* at 10.

Indeed, the foundation of Defendants' argument is correct: "[a] plaintiff who alleges that a product is defective may not recover for damage caused by the product on the basis of any theory of liability other than the LPLA." *Wornner*, 2014 WL 130331, at *4 (citing La. Rev. Stat. Ann. § 9:2800.52); *Brown*, 52 F.3d at 526 ("The LPLA 'establishes the exclusive theories of liability for manufacturers for damage caused by their products'" (quoting La. Rev. Stat. Ann. § 9:2800.52)). In that regard, as Defendants argue, in order to recover under the LPLA, K&B must qualify as a manufacturer. *See id.* But, Defendants' arguments are based on a narrower definition of "manufacturer" than that expressly provided by the LPLA.

The LPLA defines a "manufacturer" as:

(1) [A] person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:

    (a) *A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.*

    (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.

    (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.

    (d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the

following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.

La. Rev. Stat. Ann. § 9:2800.53 (emphasis added). Notably, encompassed in the LPLA's definition of "manufacturer" is that a manufacturer may be an entity that labels or repackages products as its own, or an entity that in some way holds itself out as the manufacturer of the product. La. Rev. Stat. Ann. § 9:2800.53(1)(a). Thus, if K&B were to have labeled the J&J talcum products as its own or represented itself as the manufacturer of the J&J talcum products, K&B could be considered a "manufacturer" under the LPLA, despite the fact that K&B never actually exercised control over the design, construction, or quality of the J&J talcum products. Indeed, Plaintiff, here, alleges that K&B "packaged," Compl. ¶7, and "represent[ed] themselves as manufacturers of [the J&J talcum products] or were professional vendors of [the J&J talcum products]." Compl. ¶ 36. Additionally, in her motion to remand, Plaintiff clarifies that K&B "repackaged and/or rebranded [the J&J talcum products], and sold them as their own." Pl.'s Mot. to Remand, at 9. Therefore, accepting Plaintiff's allegations as true, K&B meets the LPLA definition of "manufacturer."

Consequently, Defendants' argument, which is premised on part (1)(b) of the LPLA—"A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage"—neglects to

recognize the other types of manufacturers explicitly defined within the statute, such as part (1)(a). So, while K&B may not have "exercised control over the design, construction, or quality of the [J&J] talcum products," or played a "role in manufacturing, testing, or designing" the J&J talcum products, Plaintiff's allegations make clear that K&B repackaged the J&J talcum products and sold them as its own, such that K&B held itself out as the manufacturer of the J&J talcum products.

Consistent with the fraudulent joinder assessment, this Court next looks beyond the pleadings for indicia of fraudulent joinder. *See Abels*, 770 F.2d at 29. The purpose is to assess whether "[p]laintiffs' conduct . . . [was] consistent with an intention to actually proceed against [the] defendant[ ]." *Id.* at 32. In that regard, this Court notes that Defendants attached affidavits to their Memorandum of Law in Opposition to Plaintiff's Motion to Remand. Relevant here, the affidavits of Catherine Furtado and William Bergin *attempt* to create a dispute over whether K&B qualifies as a manufacturer of the J&J talcum products. *See* Furtado Aff. ¶¶ 5–6; Bergin Aff. ¶¶ 5–6. However, the affidavits only certify that "K&B did not test, design, evaluate, or manufacture the [J&J talcum] products." *See* Furtado Aff. ¶ 6; Bergin Aff. ¶ 6. Hence, just as Defendants failed to address part (1)(a) of the LPLA's definition of "manufacturer" in their Memorandum of Law in Opposition to Plaintiff's Motion to Remand, their affidavits are also silent as to that theory. Again, Plaintiff's theory of liability focuses on K&B having held itself out as a manufacturer. Regardless of Defendants' contention, Defendants (or their affidavits) do not address or otherwise dispute that K&B held itself out as a manufacturer of the J&J talcum products and that K&B allegedly repackaged the J&J

talcum products it sold. Therefore, the Court must take Plaintiff's allegations in this regard as true and accept K&B as a "manufacturer" under the LPLA definition.[13]

Next, Defendants assert that Plaintiff's argument regarding K&B as an actual manufacturer of its *own* talcum powder products—in its motion to remand, not the complaint—should be disregarded because the allegations function as a post-removal attempt to cure a deficiency in the complaint. Def.'s Mem. in Opp. to Pl.'s Mot. to Remand, at 11 (citing *Lopienski v. Centocor, Inc.*, 2008 WL 2565065, at *2 (D.N.J. June 25, 2008). However, since the Court has already found Plaintiff sufficiently alleged facts to qualify K&B as a manufacturer under the LPLA, the Court need not consider Plaintiff's new allegations nor address Defendants' suggestion that the Court disregard any new facts alleged in Plaintiff's motion.

---

[13] Defendants' reliance on *Tauzier v. Julian Graham Dodge*, 1998 WL 458184, at *4 (E.D. La. Aug. 4, 1998) and *Walker v. Philip Morris Inc.*, No. CIV.A. 02-2995, 2003 WL 21914056, at *4 (E.D. La. Aug. 8, 2003) is similarly unavailing. In deciding that the in-state defendant in *Tauzier* was fraudulently joined, the court explained that the plaintiff "failed to allege any facts that would support a finding that [the defendant] was a seller which could be held accountable as a manufacturer under the LPLA." *Tauzier*, 1998 WL 458184, at *4. Specifically, the court pointed out the fact that "Plaintiff's complaint does *not* assert that [the defendant] held itself out as the product's manufacturer." *Id.* (emphasis added). Here, Plaintiff *has* asserted that K&B held itself out as the product's manufacturer. And in *Walker*, the court decided that the in-state defendants could not qualify as "manufacturers" under the LPLA because "[e]ach of the [in-state] defendants . . . attested in a sworn affidavit that it has never engaged in designing, manufacturing, *packaging*, or *labeling* [the products in question]; has never *labeled*, *packaged*, or *advertised* [the products in question] *as its own product, or otherwise held itself out as the manufacturer* of [the products in question] . . ." *Walker*, 2003 WL 21914056, at *4 (emphasis added). Significantly, the court emphasized that "[p]laintiffs have presented no evidence to dispute these facts." *Walker*, 2003 WL 21914056, at *4. In this case, Defendants have failed to dispute Plaintiff's allegations that K&B held itself out as a manufacturer of the J&J talcum products or played some role in the repackaging of the J&J talcum products. Thus, both cases that Defendants rely on are distinguishable from the instant matter.

In sum, because this Court (i) bears in mind that its evaluation here differs from a Rule 12(b)(6) evaluation, (ii) accepts as true Plaintiff's factual allegations in the Complaint, and (iii) resolves any doubt in favor of remand, this Court finds that Plaintiff sufficiently alleges in her Complaint facts to paint a colorable claim against K&B as a manufacturer under the LPLA. Indeed, "[t]o inquire any further into the legal merits [of Plaintiff's claim] would be inappropriate in a preliminary jurisdictional determination." *Abels*, 770 F.2d at 32–33 (footnote omitted).

### ii. Pre-LPLA Liability as a Professional Vendor[14]

Second, Defendants argue that Plaintiff's professional vendor theory of liability has been legislatively abrogated by the LPLA, and therefore, the claim has no colorable basis. Def.'s Mem. in Opp. to Pl.'s Mot. to Remand, at 18. As such, Defendants contend that K&B could not be liable as a professional vendor for conduct arising *after* the LPLA's enactment—September 1, 1988. Additionally, Defendants argue that K&B could not be liable as a professional vendor for conduct occurring *prior* to the enactment of the LPLA. Specifically, Defendants argue that to hold K&B liable as a professional vendor for its conduct before September 1, 1988, K&B would have had to be a

---

[14]    The "professional vendor" theory of liability was officially adopted by the Louisiana Supreme Court in *Chappuis v. Sears Roebuck & Co.,* 358 So.2d 926 (La. 1978). In *Chappuis*, the court explained that a seller assumes the same responsibility as the manufacturer, if (1) it holds the product out to the public as its own and (2) the size, volume, and merchandising practices of the seller bring the seller "within the class of 'professional venders,' who are presumed to know of the defects in their wares." *Chappuis*, 358 So.2d at 930 (citing Morrow, *Warranty of Quality: A Comparative Study*, 14 Tul. L. Rev. 529, 539 (1940)). Following *Chappuis*, the Louisiana Supreme Court further expounded upon the professional vendor theory: "[T]o qualify as a professional vendor, . . . one must be in the business of [regularly] selling the product." *Reeves v. AcroMed Corp.*, 103 F.3d 442, 449 n.2 (5th Cir. 1997) (citing *Rowell v. Carter Mobile Homes, Inc.*, 500 So.2d 748, 752 (La. 1987) (explaining that a bank could not be held to be a professional vendor when it only occasionally sold mobile homes which it was forced to acquire in foreclosures)).

"sprawling seller of the [J&J talcum] product[s] and 'held the product out to the public *as its own*.'" *Id.* at 19 (quoting *Chappuis,* 358 So.2d at 930). According to Defendants, "Plaintiff does not make any allegation in the Petition—much less a colorable one—that [K&B] sold the products in question 'as its own.'" *Id.* (quoting *Chappuis,* 358 So.2d at 930). Instead, Defendants argue that Plaintiff first made this argument in her remand motion. *Id.* This, however, is simply not accurate.

Indeed, as Defendants state, it does appear that "since the passage of the LPLA, there is no legally recognized status as professional vendor."[15] *Bellow v. Fleetwood Motor Homes*, No. CIV.A. 06-2039, 2007 WL 1308382, at *2 (W.D. La. Apr. 13, 2007) (citing *Hoerner*, 812 So.2d at 59 n.1). Accordingly, Plaintiff's causes of action accruing after the LPLA's enactment are governed by the LPLA, as this Court has so recognized, *supra*. *See Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261 (5th Cir. 2002) ("[T]he LPLA contains an exclusive remedy provision, stating that [a] claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in the LPLA." (alteration added; internal quotations and alterations omitted; citation omitted)). However, Plaintiff's causes of action accruing prior to September 1, 1988, may be governed by a professional vendor theory, if (1) K&B by its "size, volume and merchandising practices . . . bring [it] within the class of 'professional venders,' who are presumed to know of the defects in their wares" and (2) K&B "held the product out to the public as its own." *Chappuis*, 358 So. 2d at 930. And,

---

[15] Some courts imply that "the LPLA, in [its] defini[tion of] 'manufacturer' [has] accomplishe[d] the same thing as professional vendor status." *Bellow*, 2007 WL 1308382, at *2; *see, e.g.*, *Sullivan v. Rowan Companies, Inc.*, 736 F. Supp. 722, 727 (E.D. La. 1990), *aff'd*, 952 F.2d 141 (5th Cir. 1992) (likening a 'manufacturer' under the LPLA [to] a 'professional vendor' under pre-LPLA jurisprudence").

as discussed above, this Court has already found that Plaintiff has sufficiently alleged—for the purpose of overcoming a fraudulent joinder inquiry—that K&B held itself out as the manufacturer of the J&J talcum products by repacking them as its own. Thus, the only question remaining is whether K&B was allegedly a "sprawling seller." The Complaint, here, does in fact allege that K&B's "size, volume of business and merchandising practices," as they relate to the talcum products, satisfies the fraudulent joinder analysis for raising a colorable claim under professional vendor liability. Therefore, this Court finds that Plaintiff's claims accruing before the LPLA's enactment have *some* reasonable basis in fact or *some* colorable ground. *See Boyer,* 913 F.2d at 111.

Nevertheless, since this Court has already found a colorable claim against K&B as a manufacturer, it need not wade into the waters of determining when Plaintiff's causes of action accrued for the purpose of applying a professional vendor theory of liability. Rather, on remand, the Louisiana state court may address this issue and determine whether and when the "professional vendor" theory may be applicable.

### B. Liability as a Non-Manufacturer Seller Under Louisiana Tort Law

Next, Defendants contend that K&B cannot be liable as a non-manufacturer seller because K&B did not know or have reason to know that the J&J talcum products were defective, as is required to hold a non-manufacturer seller liable in Louisiana. *See Tauzier*, 1998 WL 458184, at *4 ("[A] non-manufacturer seller can only be held liable for damages in tort if it knew or should have known that the product was defective and failed to notify the purchaser of the defect. . . . Unlike a manufacturer, a seller is also not presumed to know of its products' vices." (citations omitted)). Plaintiff, however, does not advance a position that K&B should be held liable as a non-manufacturer seller,

either in her Complaint or her motion. Rather, this argument was first discussed in Defendants' Notice of Removal, *see* Notice of Removal, at ¶¶ 11–12, and argued more extensively by Defendants in their Memorandum of Law in Opposition to Plaintiff's Motion to Remand. *See* Def.'s Mem. in Opp. to Pl.'s Mot. to Remand, at 13–17. Thus, to the extent that Defendants argue that K&B did not have the requisite knowledge to be held liable as a non-manufacturer seller, this Court need not analyze a theory of liability not pled by Plaintiff. In any event, this Court has already found a colorable ground exists against K&B under the LPLA and common law.

### C. Plaintiff's Allegations Connecting Her Injury to K&B

Lastly, Defendants contend that Plaintiff's Complaint is bereft of factual allegations linking K&B to her injuries. Specifically, Defendants argue that Plaintiff failed to allege how K&B contributed to her injuries or that she purchased the J&J talcum products from K&B. *See* Def.'s Mem. in Opp. to Pl.'s Mot. to Remand, at 21–24. Again, this Court finds Defendants' arguments unavailing.

Indeed, "[t]o succeed on a claim brought under the LPLA, the plaintiff must prove, among other things, that the defendant manufactured and the plaintiff used the product which caused the alleged injuries." *Possa v. Eli Lilly & Co.*, No. CIV.A. 05-1307-JJB-S, 2006 WL 6393160, at *1 (M.D. La. May 10, 2006) (citing La. Rev. Stat. Ann. § 9:2800.54; *Wheat v. Pfizer, Inc.*, 31 F.3d 340 (5th Cir. 1994); *see also Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241 (E.D. La. 1996), *adopted and aff'd* 106 F.3d 1245, 1247 (5th Cir. 1997)). More specifically, to state a cause of action under the LPLA, Plaintiff must allege:

1. that the defendant is a manufacturer of the product;

2. that the claimant's damage was proximately caused by a characteristic of the product;
3. that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute;[16] and
4. That the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*King v. Bayer Pharm. Corp.*, No. CIV.A. 09-0465, 2009 WL 2135223, at *4 (W.D. La. July 13, 2009) (citing *Jefferson*, 106 F.3d at 1251) (footnote added).

Alternatively, to succeed on a strict products liability claim against a manufacturer applying Louisiana law prior to the adoption of the LPLA, "plaintiffs [must] 'prove (1) that the injury or damage resulted from the condition of the product; (2) that the condition made the product unreasonably dangerous to normal use; and (3) that the condition existed at the time the product left the control of the manufacturer or supplier.'" *Guilbeau v. W.W. Henry Co.*, 85 F.3d 1149, 1162 (5th Cir. 1996) (quoting *Bell v. Jet Wheel Blast*, 462 So.2d 166, 168 (La. 1985); *see also Halphen v. Johns–Manville Sales Corp.*, 484 So.2d 110, 113 (La. 1986)). In the case of a negligence action, a "claimant must be able to allege fault, causation, and damages." *Brown*, 52 F.3d at 527.

Here, Plaintiff has alleged that K&B repackaged the J&J talcum products, and "represent[ed] themselves as manufacturers of [the J&J talcum products] or were professional vendors of [the J&J talcum products]," Compl. ¶ 36, and that she

---

[16]     To prove a product was unreasonably dangerous, a Plaintiff must show one of the following four theories:
(1) that it was unreasonably dangerous in construction or composition;
(2) that it was unreasonably dangerous in design;
(3) that it was unreasonably dangerous because of inadequate warning; or
(4) that it was unreasonably dangerous because of nonconformity to an express warranty.
*Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997) (citing La. Rev. Stat. Ann. § 9:2800.54(B)(1–4)).

"purchased" the J&J talcum products from K&B, which she "used and perineally applied." Compl. ¶42. According to Plaintiff's Complaint, "[a]s a direct and proximate result of Defendants' . . . conduct, [*i.e.* product defects and failure to warn, Plaintiff] was injured and suffered damages, namely by her diagnosis of ovarian cancer, and resulting damages, fully alleged [within the petition]." Pl.'s Compl. ¶ 32.

Based on Plaintiff's allegations, although her language may not paint the clearest picture, this Court finds a sufficient a causal connection exists between Plaintiff's injuries and K&B: (1) K&B allegedly repackaged the J&J talcum products or otherwise held itself out as a manufacturer of the J&J talcum products; (2) Plaintiff purchased these talcum products from K&B; (3) Plaintiff used and perineally applied the talcum products; and (4) the use of those talcum products caused Plaintiff's injuries. Thus, Plaintiff has met the low bar in connection with the fraudulent joinder inquiry.

In sum, this Court's determination involves only the issue of fraudulent joinder, not whether Plaintiff's claims would pass muster under Federal Rule of Civil Procedure 12(b)(6). *See In re Briscoe*, 448 F.3d at 218. Accordingly, Plaintiff's allegations show an actual intention to proceed against at least one of the defendants in Louisiana—K&B. Therefore, without "inquir[ing] any further into the legal merits[, which] would be inappropriate in a preliminary jurisdictional determination," there is "some reasonable basis in fact and some colorable legal ground supporting a claim against [K&B]." *Id.* at 219 (internal citations and alterations omitted). Thus, it cannot be said that Plaintiff's claims could be deemed "wholly insubstantial and frivolous." *Id.* at 218.

## CONCLUSION

For the above reasons, Plaintiff's motion is **GRANTED**, and this matter is remanded to Civil District Court for the Parish of Orleans in Louisiana.


DATED:  October 12, 2017                          /s/ Freda L. Wolfson
                                                  Freda L. Wolfson
                                                  U.S. District Judge